## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GABE GONZALEZ, on behalf of himself and others similarly situated,

               Plaintiff,

      v.

JOCELYN BENSON, in her official capacity as Secretary of State of the Michigan Department of State,

               Defendant

**Case No.**

**JURY TRIAL DEMANDED
INJUNCTIVE RELIEF SOUGHT**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff GABE GONZALEZ, on behalf of himself and others similarly situated, seeks declaratory and injunctive relief and alleges as follows:

## NATURE OF ACTION

1. "There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1440-41 (2014). The right to effective participation in the

electoral process is constitutionally protected because "voting is of the most fundamental significance under our constitutional structure. . . ." *Burdick v. Takushi*, 504 U.S. 428, 433-44 (1992). This is because the right to vote is the "fundamental political right . . . preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (*quoting Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

2.     This lawsuit challenges the Secretary of State's failure to include candidate Roque De La Fuente on the Republican primary ballot because she did not consider Spanish-speaking media as an indicator of support. She also did not consider internet-based media. Failure to consider Spanish-speaking and internet-based media creates a barrier for Hispanic and Latino voters to get their candidates on the ballot in violation of their civil rights, their elective franchise, and the Voting Rights Act.

## **FACTS**

3.     The State of Michigan's ballot access law for the primary ballot gives an advantage to certain candidates for President of the United States. Michigan law empowers the Secretary of State to automatically include on the ballot any candidate "generally advocated by

the national news media to be potential candidates". MLA § 168.614a.

These candidates selected by the Secretary of State do not have to request

inclusion or file any documents in order to be on the ballot.

4.     One Republican candidate for President seeking inclusion on

the ballot for the March 10, 2020 primary is Roque De La Fuente. Mr. De

La Fuente is a United States citizen from birth but is of Hispanic and

Latino ethnicity. Mr. De La Fuente speaks fluent Spanish.

5.     Mr. De La Fuente is known to the Republican party, is the

only Republican challenger to President Trump on a dozen ballots (so

far), and has reported to the FEC more than ten million dollars in his

campaign accounts. He is also listed on educational and nonprofit

websites with national prominence as a major candidate.

6.     On November 5, 2020, Mr. De La Fuente contacted the

Michigan Secretary of State and advised her that he wished and expected

to be included on the ballot. Mr. De La Fuente has national media

attention, including Spanish-language media attention on both television

and in print, and internet-based media attention in both English and

Spanish.

7.     On November 8, 2019, Defendant JOCELYN BENSON,

Michigan's currently elected Secretary of State, released her list of

candidates for the Republican and Democratic primaries.[1] The State
Department further issued a press release announcing this fact.[2]

8.     The Secretary of State included Donald Trump, Mark Sanford,
Bill Weld, and Joe Walsh as the candidates for the Republican primary.
She did not include Mr. De La Fuente.

9.     Of these Republican candidates, Mark Sanford is not on any
other ballots and has stated that he will not further seek the Republican
nomination. Joe Walsh is only on the New Hampshire ballot and not on
any other ballots (including Alabama and Arkansas, whose deadlines
have already passed). Roque De La Fuente, in contrast, is on the ballot in
a dozen states, preceding the efforts of even incumbent President Trump.

10.    The Secretary of State included eighteen names for the
Democratic primary. Among these, she included Michael Bloomberg, who
had previously stated that he would not run for President, and had not
announced any run at the time of publishing, nor has he appeared at any
of the nationally broadcasted Democratic debates.

11.    She included Michael Bennet and Marianne Williamson, both
of whom have only been in the first two debates and are polling at less
than 1%. She included Steve Bullock and Tom Steyer, both of whom have

[1] *See* https://www.michigan.gov/documents/sos/20202_Presidential_Primary_Candidate_Listing_671047_7.pdf.
[2] *See* https://www.michigan.gov/sos/0,4670,7-127-93094-511945--,00.html

only appeared each in one nationally televised debate. She included
Wayne Messem and Joe Sestak, neither of whom have appeared in any of
the Democratic party's debates.

12.    The Secretary of State has shown that there is enough space
to be inclusive of eighteen candidates on the Democratic ballot but not
five on the Republican ballot (or, as is more likely, three, since Mr.
Sanford is not seeking the nomination and Mr. Walsh failed to appear for
other state ballots).

13.    After the Secretary of State publishes her list of candidates,
the chairs of the Michigan Democratic and Republicans parties may
provide the names of additional candidates, but are not required to add to
the list, or to confirm the selections of the Secretary of State. The
deadline for this was set as 4 p.m. on November 12, 2019.

14.    Upon inquiry by Mr. De La Fuente's campaign on November
11, 2019, the Michigan Republican Party stated that they required a
"donation" to the party of "more than $100,000" to request inclusion of
any candidate besides President Trump. On November 12, 2019, the
Michigan Republican Party wrote to the Secretary of State that they only
supported inclusion of President Trump as a primary candidate on the
ballot.

15.    Michigan has an open primary. Any eligible voter may vote in the Republican primary for a candidate of their choosing. In 2018, the Secretary of State reported than the State of Michigan has 7,831,250 citizens eligible to vote, with the vast majority of them being registered to vote.[3]

16.    Thus, as an open primary, the candidates listed on primary ballots applies to all of Michigan's approximately 7.5 million voters. The process for qualifying candidates included on the ballot must be facially neutral and not have a disparate impact on voters based on race.

17.    Any automatically included candidates do not have to petition for ballot access. MCL § 168.615a(1). The petition process for ballot access requires signature gathering at such volume and over such a short time frame that it costs upwards of $100,000. Excluded candidates are required to petition for ballot inclusion at this great expense. MCL § 168.615a(2).

18.    Michigan law does not provide any procedures, rules, or regulations governing the Secretary's determinations. The term "national media" is undefined in the statutes. The Secretary does not provide any explanation for her determinations, nor publishes in advance a list of

[3] *See* https://www.michigan.gov/sos/0,4670,7-127-1633_8722-195479--,00.html.

media sources that she will consult. The Secretary's determination of who appears on the list appears to be arbitrary and her discretion opaque.

19.    Mr. De La Fuente provided examples of media attention that he has received acknowledging him as a candidate for President in the Republican primaries. The bulk of Mr. De La Fuente's media is in Spanish and/or on so-called "alternative" media and political websites of national prominence and readership. But none of this media was accepted or acknowledged by the Secretary of State as sufficient for inclusion.

20.    "Media" is defined by Oxford Dictionary as, "The main means of mass communication (broadcasting, publishing, and the Internet) regarded collectively." Technologically, media must include social media, websites, blogs, videos, and other online forums, as significant venues for mass communication and information sharing amongst the voting public.

21.    Oxford Dictionary defines, "national" as "Relating to or characteristic of a nation; common to a whole nation".

22.    Nothing about these combined definitions limits the Secretary of State's office to considering only a small select group of cable news channels that broadcast nationally. In fact, excluding media from local channels or newspapers would have the absurd effect of disregarding newspapers like the New York Times (foremost a New York newspaper)

or stations like CBS (primarily broadcast through local affiliates with their own news teams).

23.    Further, most internet-based media is national in scope by both definition and by audience. News sites such as *Ballot Access News* and educational sites such as *Ballotpedia* intentionally focus on a nationwide audience and are not geographically limited in title, distribution, or content.

24.    So-called "alternative media" and internet-based sources must be given weight in order to avoid disenfranchising younger, and poorer voters, which may have a disparate impact on Hispanics and Latinos. The majority of Americans, especially under the age of 65, now obtain their news from free online sources and social media, and not TV or print newspapers.[4]

25.    Further, Hispanics and Latinos in America get the majority of their news from internet sources, meeting or exceeding television as a source of political information. Pew reported that its data from 2016 shows that "On a typical weekday, three-quarters of U.S. Latinos get their news from internet sources, nearly equal to the share who do so

---

[4] *See Social media outpaces print newspapers in the U.S. as a news source*, Pew Research Center, https://www.pewresearch.org/fact-tank/2018/12/10/social-media-outpaces-print-newspapers-in-the-u-s-as-a-news-source/.

from television."[5]

26. "The growth of the internet as a news source on a typical weekday among Hispanics mirrors the trend in the overall U.S. population. . . . Millennials (those ages 18 to 35 in 2016) are driving many of the changes in Hispanic news consumption – in part because this generation makes up more than a quarter of U.S. Hispanic adults, a higher share than among other racial or ethnic groups. In 2016, 91% of Hispanic Millennials got news from the internet. . . ." *Id*.

27. Spanish-speaking media is also necessary to consider in order to not disenfranchise voters based on ethnicity, national-origin, race, and language preference. Currently, about 41 million Americans, which is a significant 13.4% of the population, speaks primarily Spanish at home.

28. The Census Bureau reported in March 2015 that it estimated that more than 11% of the voting population is Hispanic or Latino, and that number is growing.[6]

29. Pew Research estimates that "A record 32 million Latinos are projected to be eligible to vote in 2020, up from 27.3 million in 2016. The 2020 election will mark the first time that Hispanics will be the largest racial and ethnic minority group in the electorate, accounting for just

---

[5] *See Among U.S. Latinos, the internet now rivals television as a source for news* https://www.pewresearch.org/fact-tank/2018/01/11/among-u-s-latinos-the-internet-now-rivals-television-as-a-source-for-news/
[6] *See* https://www.census.gov/content/dam/Census/library/publications/2015/demo/p25-1143.pdf.

over 13% of eligible voters."[7]

30.     Michigan has a significant population of Hispanic and Latino voters. In 2016, the Hispanic and Latino population in Michigan was the 20th largest in the nation. Approximately half a million Hispanics and Latinos reside in Michigan, with at least half of those people being eligible to vote.

31.     As a result, the failure to account for and include Spanish speaking and/or alternative or online media excludes candidates known to Hispanic and Latino voters. It creates an additional barrier for Spanish-speaking candidates to appear on the ballot by requiring that they campaign in English. It ignores their support and efforts in Spanish. It ignores the opinions of Spanish-speaking voters and thwarts their participation in democracy using their languages and mediums of preference.

32.     Mr. De La Fuente is intentionally focusing campaign efforts on the growing Hispanic and Latino demographic precisely because Hispanics and Latinos feel disenfranchised in the current political climate. It is imperative that a free and fair government considers and does not undervalue Spanish language media within the United States or

---

[7] *See* https://www.pewresearch.org/fact-tank/2019/10/14/facts-for-national-Hispanic-heritage-month/

the large population that it serves.

33.    Democrats recognize the importance of Hispanic and Latino voters in Michigan as potentially tipping the election away from the President in that state in a General contest. A Democratic research group has specifically commissioned polls and studies to determine the percentage of Latino voters in Michigan who can be turned away from the Republican party to the Democratic candidate.[8]

34.    Issues related to Hispanics and Latinos, especially with respect to immigration, are hotbed issues in the State of Michigan. A poll commissioned by the Detroit Regional Chamber of Commerce earlier this year revealed that likely Michigan voters' number one issue is immigration and border security.[9] A third of Michigan Republicans reported believing that immigrants were bad for Michigan.[10]

35.    Michigan has social and historical conditions that show that Hispanics and Latinos have long faced significant discrimination and efforts to have them removed from the state.

36.    In the 1920s, Latinos suffered from racial segregation and discrimination from the white population that feared that Mexicans were

---

[8] *See Deep dive poll of Latino voters aims to ramp up 2020 election outreach*, NBC News, https://www.nbcnews.com/news/latino/deep-dive-poll-latino-voters-aims-ramp-2020-election-outreach-n1047156
[9] *See POLL: Michiganders see immigration, Trump as most important issues; split on health care* https://wwmt.com/news/state/poll-michiganders-see-immigration-trump-as-most-important-issues-split-on-health-care.
[10] *Id.*

taking their jobs.[11] Throughout the 1930s, the Michigan government had a program they called "Repatriation," which was an active removal and deportation of Hispanics and Latinos to Mexico in favor of "ethnic cleansing."[12] The population of Latinos in Detroit dropped by over 90% as a result.[13]

37.    In the 1950s, the Latino population swelled again in Michigan. By 1957, and continuing through the 1960s, the Michigan government, fearing too many Latino immigrants, launched a program called "Operation Wetback" to again deport Latinos to Mexico.[14]

38.    Anti-immigrant and racist attitudes against Latinos still exists in Michigan, even at present day, as revealed in polls.

39.    Mr. De La Fuente is an important candidate for Hispanic and Latino Republican voters who may be concerned about President Trump's policies (including, especially, his policies towards Latin America and immigration) or his continued fitness to lead (particularly in light of the rapidly developing impeachment investigation in the House). Failure to include him disproportionately impacts Michigan's Hispanic and Latino voters seeking to elect candidates who best reflect their values and who

---

[11] Hoffnung-Garskof, Jesse. *"Michigan" Latino America State by State.* (2004), pp. 1-13.
[12] *Id.*
[13] *Id.*
[14] *Id.*

will protect their inclusion in the Michigan economy and society. It further creates extra barriers to their franchise based on their ethnicity, race, income levels, and language preference.

## JURISDICTION AND VENUE

40.    This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the United States Constitution and seeks equitable and other relief for the deprivation of constitutional rights, including the right to vote and for elective franchise, under color of state law.

41.    This Court has jurisdiction to award attorneys' fees and costs pursuant to 52 U.S.C. § 10301 *et seq.*, 42 U.S.C. § 1988, and 28 U.S.C. § 1920. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

42.    This Court has personal jurisdiction over Defendant Jocelyn Benson, Secretary of State of the Michigan Department of State, who is sued in her official capacity. Defendant is an elected state government official who resides in the State of Michigan and works in Lansing, Michigan.

43.    This Court has personal jurisdiction over Plaintiff and all

similarly situated Plaintiff Class members because Plaintiff is an eligible voter in the state of Michigan of Hispanic and/or Latino ethnicity.

44. Venue is appropriate in the Eastern District of Michigan, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to these claims occurred and will continue to occur in this district. Plaintiff is a resident of the city of Detroit, where he exercises his right to elective franchise, and the actions of Defendant will impact him primarily in this district.

## PARTIES

45. Plaintiff Gabe Gonzalez is a United States citizen, 48 years old, and a resident of Detroit, Michigan. Mr. Gonzalez is of Hispanic and/or Latino ethnicity and speaks Spanish. Mr. Gonzalez is eligible to vote in the State of Michigan. Mr. Gonzalez is a consumer of Spanish-speaking media and online media. He does not pay for cable news channels or national newspapers as his primary form of political information. Mr. Gonzalez supports the inclusion of Roque De La Fuente on the Republican Primary ballot.

46. Defendant Jocelyn Benson is the Secretary of State of the Michigan Department of State and is sued in her official capacity.

14

Defendant is an elected state government official who resides in the State of Michigan and works in Lansing, Michigan. As Secretary of State, Defendant Benson is Michigan's chief elections officer and administers Michigan's election laws. MLA § 168.21. The Secretary of State has "supervisory control over local election officials in the performance of their duties under the provisions of this act." *Id.*

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs bring this action on behalf of themselves and all those similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). The Plaintiff Class is defined as:

Subclass 1: Any current or future resident of the State of Michigan who is a United States citizen, at least 18 years of age, and who consumes political news via Spanish language media.

Subclass 2: Any current or future resident of the State of Michigan who is a United States citizen, of Hispanic or Latino ethnicity, race, or national origin, at least 18 years of age, and who consumes political news via free sources of media other than cable news television and national print newspapers.

48.    It is estimated that each subclass consists of approximately

250,000 voters in Michigan presently.

49.    Questions of law are common to the class including: (a) May the Secretary of State exclude Spanish-language media from the definition of "national media" when determining a list of candidates for the primary ballot for President when doing so interferes with the rights of Hispanics and Latinos to include the candidate of their choice? and (b) May the Secretary of State exclude internet-based and/or "alternative" media from the definition of "national media" when determining a list of candidates for the primary ballot for President when doing so interferes with the rights of Hispanics and Latinos to include the candidate of their choice?

50.    Plaintiff's claims are typical of the class. Plaintiff challenges the the unconstitutional and arbitrary application of Michigan ballot access law by the Secretary of State and its disparate impact on Hispanic and Latino voters. Plaintiff and the Plaintiff Class members all suffer the same injury to their elective franchise.

51.    Plaintiff will fairly and adequately represent the interests of all members of the proposed class because he seeks relief on behalf of the class as a whole and has no interests antagonistic to other members of the class. Plaintiff, like other members of the proposed Plaintiff Class,

faces disenfranchisement on the basis of his race. Plaintiff seeks to have the Secretary's application of the law excluding Spanish language and alternative media sources declared unlawful and permanently enjoined.

52.   Proposed class counsel will fairly and adequately represent the class. Proposed class counsel is experienced with civil rights litigation, including voting rights cases and class actions.

53.   Defendants have acted and will continue to act on grounds generally applicable to the Plaintiff Class in their selection of candidates for inclusion on the ballot absent an expensive petitioning process in a way that excludes Spanish speaking, Hispanic and Latino candidates. Final declaratory and injunctive relief is appropriate with respect to the Plaintiff Class.

## COUNT ONE
## (Violation of the Voting Rights Act)

54.   This action is brought by the Plaintiffs pursuant the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301 *et seq.* ("VRA"). This section provides:

(a) No voting qualification or prerequisite to voting or

standard, practice, or procedure shall be imposed or applied

by any State or political subdivision in a manner which

results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

(b)   A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.   The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered:  Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

55.   Hispanics, Latinos and Spanish speaking voters are recognized as a protected class under the VRA.

56. Defendant's failure to consider Spanish-language and alternative media denies Hispanic and Latino voters, including the Plaintiff and Plaintiff Class members, the same rights of other members of the electorate to participate in the political process and elect representatives of their choice.

57. Defendant's failure to consider Spanish-language and alternative media is within the social and historical conditions of Michigan that results in Hispanics and Latinos having less access to democracy, and less representatives that are of their same race, or are Spanish-speaking.

58. Further, the totality of the circumstances, as alleged in this Complaint, show that Defendant has denied Plaintiff and the Plaintiff Class full and equal opportunity to elect candidates of their choosing.

59. Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

## **PRAYER FOR RELIEF**

Plaintiff, the Plaintiff Class, respectfully request that this Court:

(a) Assume jurisdiction over this matter;

(b) Certify this matter as a class action pursuant to Rules 23(a) and

23(b)(2) of the Federal Rules of Civil Procedure;

(c)     Appoint counsel as class counsel pursuant to Federal Rule of Civil Procedure 23(g);

(d)     Declare that the Secretary of State of the Michigan Department of State must consider Spanish-language and alternative media sources when curating her list of primary candidates pursuant to MLA § 168.614a;

(e)     Issue a permanent injunction, enjoining Defendant Jocelyn Benson, and the Michigan Department of State's respective agents, officers, employees, successors, and all persons acting in concert with them from not including Roque De La Fuente on the ballot for the Republican Primary set for March 10, 2020, and requiring them to consider Spanish-language and alternative media sources when curating the Secretary of State's future lists of primary candidates pursuant to MLA § 168.614a;

(f)     Retain jurisdiction to enforce its order;

(g)     Grant Plaintiffs their reasonable attorneys' fees and costs incurred in bringing this action; and

(h)     Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


DATED:     November 26, 2019       Respectfully submitted,

/s/ William P. Tedards, Jr.
WILLIAM P. TEDARDS, JR.*
*Counsel of Record
1101 30th Street, NW, Suite 500
Washington, DC 20007
T: (202) 797-9135
E: BT@tedards.net
(DC 143636) (MI)

/s/ Alicia I. Dearn
ALICIA I. DEARN*
*Admission Pending
231 S. Bemiston Ave Ste 850 #56306
Saint Louis, MO 63105
T: (314) 526-0040
E: notices@bellatrixlaw.com

COUNSEL FOR PLAINTIFF